(166 App. Div. 599)

DONOHUE v. CITY WATER POWER CO. et al.    (No. 6847.)

(Supreme Court, Appellate Division, First Department.    March 12, 1915.)

TRUSTS ☜110—CREATION—EVIDENCE—SUFFICIENCY.

In a suit by the receiver of a corporation on behalf of its creditors, evidence *held* insufficient to show that a franchise, taken individually by one who was president and treasurer of the corporation which had formerly held and had let expire a similar franchise, was held by him in trust for the corporation.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 160; Dec. Dig. ☜110.]

Appeal from Special Term, New York County.

Action by James M. Donohue, as receiver of the Hydraulic Properties Company, against the City Water Power Company and others. From a judgment for certain defendants, plaintiff appeals. Affirmed.

See, also, 159 App. Div. 776, 144 N. Y. Supp. 923.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Lemuel E. Quigg, of New York City, for appellant.

Morgan M. Mann, of New York City, for respondents.

McLAUGHLIN, J. This action was brought to procure a judgment impressing a trust upon a franchise granted by the city of Austin, Tex., to construct a dam across the Colorado river and take water therefrom, and upon certain patent rights in which the respondents claim no interest. The Hydraulic Properties Company, of which the

plaintiff is receiver, a domestic corporation, with a capital stock of $100,000, was organized in November, 1909, to construct, buy, sell, lease, and build dams and particularly the so-called "Ransom Hollow dam." All of its capital stock was issued in payment of a one-half interest in the Ransom patent, and a license agreement under it. After the organization of the corporation the stock for a time was held approximately in equal proportions by three persons, Johnson, Doebler, and Ziegler, who also constituted its board of directors. Johnson was president and treasurer of the company, and Doebler vice president and secretary. The corporation, early in 1910, purchased a franchise theretofore granted to one Dumont by the city of Austin, Tex., to construct a dam across the Colorado river. Upon investigation, however, it was ascertained by the engineers of the corporation that this franchise was of little or no value. By reason of that fact considerable time was spent in an effort to have it modified, so that it would enable the holder to dispose of the surplus power developed. These efforts failed, and the franchise expired on January 23, 1911. Thereafter Johnson entered into negotiations with the city of Austin for the purpose of obtaining another franchise, the result of which was that on the 22d of September, 1911, a franchise was granted to him. On April 10, 1912, he assigned the same to the respondent City Water Power Company, a Connecticut corporation, which was organized by persons who had advanced Johnson, upon the pledge of the franchise, for use in connection with the enterprise, upwards of $100,-000. The respondent New York Trust Company is trustee under a mortgage given by the City Water Power Company, conveying this franchise, among other property, to it to secure the payment of an issue of bonds, of which $412,500 were outstanding at the time of the trial. The respondent Lawrence Barnum & Co. is a New York banking corporation, which underwrote the bonds or a portion of them.

The action is brought by the receiver of the Hydraulic Properties Company on behalf of its creditors. The complaint alleges, in substance, that the Hydraulic Properties Company submitted a proposal for a franchise to the city of Austin, which accepted the same, and thereby the company acquired the franchise in controversy. It further alleges that Johnson, without authority, wrongfully procured the issuance of the franchise in his own name, but thereafter represented that he held it in trust for the Hydraulic Properties Company, its stockholders and creditors. At the conclusion of the trial the learned justice held that the evidence did not establish that the Hydraulic Properties Company had any legal or equitable interest in the franchise. He also held that the respondents did not know, at the time the franchise was acquired by the City Water Power Company, the mortgage given, and the bonds sold, that the Hydraulic Properties Company claimed any interest therein. He accordingly dismissed the complaint upon the merits, and from a judgment to this effect the plaintiff appeals.

The plaintiff could succeed in the action only by establishing that the franchise obtained by Johnson was held in trust by him for the Hydraulic Properties Company, and that the respondents knew, or

under the circumstances ought to have known, that fact when they acquired their interests therein. This I think the plaintiff failed to show. A finding to the contrary, it seems to me, would be against the evidence, and for that reason would have to be set aside. It does not clearly appear from the record just when the negotiations for the proposed modification of the Dumont franchise were given up. It does, however, appear that some negotiations were carried on by the Hydraulic Properties Company looking towards the securing of a new franchise in January and March, 1911. Nothing was accomplished, and it is not claimed by the appellant that anything was done, by any one except Johnson, after March, 1911. But it is urged two letters, written on July 20 and 26, 1911, respectively, show that Johnson procured the franchise, not in fact for himself, but for the Hydraulic Properties Company. These letters do not establish that fact. The first one referred to was written by Johnson to one Lockwood, in which it was stated:

"The franchise will be assigned to the National Hydraulic Construction Company, capitalized at $500,000. I am president and treasurer; C. Frank Doebler, secretary; H. Lee Ziegler, F. W. Kristeller, directors with us."

In the second letter Johnson wrote Doebler from Austin, Tex.:

"Lawyers and engineer are fixing final wording of franchise to-day, and it is expected council will accept to-morrow, and then publish for vote, which will take 15 days from to-morrow. * * * Franchise, I think, will be worded all right for us. White has put in a lot of time studying it."

It will be observed that in neither of these letters is any mention made of the Hydraulic Properties Company, and in the first it is expressly stated that the franchise would be assigned, not to it, but to the National Hydraulic Construction Company. This company was a domestic corporation, which was organized by the individual stockholders of the Hydraulic Properties Company for the purpose of taking over and financing the Austin franchise; it being the intention to divide the stock pro rata according to their respective holdings in the Hydraulic Properties Company. No stock of that corporation, however, was ever issued, and there is no evidence that the corporation ever proceeded beyond the point of organization.

That Johnson's efforts to procure a franchise, if not in his own behalf, certainly were not in behalf of the Hydraulic Properties Company, is further evidenced by a so-called declaration of trust executed by him on August 29, 1911, in which it is recited that the franchise about to be voted upon by the people of the city of Austin—

"is held in trust by me, and will, in the event of a favorable vote thereon, be held by me, the said William D. Johnson, not individually, but as trustee for the National Hydraulic Construction Company."

The franchise was granted on September 22, 1911, to Johnson individually. Before the city of Austin would grant the franchise, it required him to deposit $25,000. The Hydraulic Properties Company did not advance this money. It was practically without funds, and had been since its organization. Nor was it in a position to have borrowed it. Substantially all the money which had been used by it, or on its behalf, was money borrowed by Johnson on his individual credit.

A fair consideration of all the evidence demonstrates, as it seems to me, it was not intended by Johnson, Doebler, or Ziegler, when the franchise was acquired by Johnson, that the same should belong to the Hydraulic Properties Company. It is doubtless true that the company was interested in having Johnson procure the franchise, for the reason it was expected, when the dam was constructed, the Hydraulic Properties Company was to do the engineering work. That neither Doebler nor Ziegler understood that Johnson was taking the franchise in trust for the Hydraulic Properties Company is further evidenced by the fact that in the agreement of September 23, 1911, Johnson made an individual assignment to them of a part of the initial payment to be made by the city of Austin upon the completion of the work. This instrument recites that Johnson—

"is the holder of a franchise granted by the council and people of the city of Austin, Tex., in and to which said franchise the parties of the second and third parts [Doebler and Ziegler] have or claim to have certain legal or equitable rights," in satisfaction of which the assignment was made.

The agreement contains no recital that the Hydraulic Properties Company was the equitable owner of the franchise, and at a meeting of its board of directors held on October 3, 1911, a resolution was adopted which recited that the corporation was not able to finance the Austin proposition, that Johnson was authorized to proceed with it on his own account, that the company would be adequately paid, through its fees for the engineering work, and that it had no interest in the franchise secured by Johnson.

The City Water Power Company, as before indicated, was organized by persons who had advanced large sums of money to Johnson on the pledge of the franchise obtained by him. There is no evidence that any of such persons had knowledge at the time of making their respective advances, or that the City Water Power Company had knowledge at the time of the assignment, that the Hydraulic Properties Company claimed to have any interest whatever in the franchise. Johnson has never been an officer, director, or in any sense a controlling factor in the corporation, nor is there any evidence that the other respondents, Lawrence Barnum & Co. and the New York Trust Company, had any knowledge of the claim of the Hydraulic Properties Company when they acquired their respective interests. Having failed to establish that the Hydraulic Properties Company had any interest whatever in the franchise, or that its claim to an interest was known to these respondents, the complaint as to them was properly dismissed.

The judgment is therefore affirmed, with costs.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur.

LAUGHLIN, J. I concur in the affirmance of the judgment, on the ground that the respondents were bona fide purchasers of the franchise for value and without notice; but I am of opinion that Johnson received the franchise in trust for the Hydraulic Properties Company.